UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY CASSELLS,

Plaintiff,

v.

COUNTY OF SACRAMENTO, et al.,

Defendants.

No.  2:22-cv-1647 CKD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding pro se and seeking damages pursuant to 42 U.S.C. § 1983. Plaintiff's claims concern the conditions of confinement at the Sacramento County Main Jail (SCMJ) between January 22 and September 23, 2020, while plaintiff was housed there for trial under California's Sexually Violent Predator Act (SVPA).  Cal. Welf. & Inst. Code §§ 6600-6609.3.  The defendants identified by plaintiff are Dr. Grant Nugent, former Sacramento County Sheriff Scott Jones, and Sacramento County.  Defendants move for summary judgment.  For the reasons which follow, the motion should be granted in part and denied in part.

I.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents,

1

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely on the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must show that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  That said, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

II.  Dr. Grant Nugent

Plaintiff alleges in his complaint that while at the SCMJ he suffered from a degenerative left hip which had, prior to that point, been treated with steroid injections relieving pain and loss of mobility.  Despite informing medical staff including defendant Dr. Grant Nugent of his condition, including severe pain in his hip and back, loss of mobility, and loss of sleep, plaintiff was provided no treatment.  ECF No. 1 at 6.

A.  Law

Persons in custody under civil law have a Fourteenth Amendment due process right to health care.  Mitchell v. Washington, 818 F.3d 436, (9th Cir. 2016).  A physician violates the person in custody's constitutional rights with conduct that diverges from that of a reasonable professional.  Ammons v. Wash. Dep't. of Soc. & Health Servs., 648 F.3d 1020, 1027 (9th Cir. 2011).  A decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Youngberg v. Romeo, 457 U.S. 307, 323 (1982).

B.  Analysis

In his declaration, Dr. Nugent indicates that between 2014 and 2019 he was the Medical

3

Director for Correctional Health Services for Sacramento County.  ECF No. 57-4 at 651.  From 2020 forward, Dr. Nugent's job duties were limited to "patient chart review and reviewing outside correspondence with outside medical providers."  Id.  Also, Dr. Nugent was a "resource for other doctors to ask questions."  Id.  Finally, Dr. Nugent "reviewed inmate medications to ensure that inmates received proper medication," including a review of "an inmate patient's medical chart or imaging records within the inmate's medical records."  Id.  Dr. Nugent has not been physically present in the SCMJ since 2019.  Id.

In his opposition to defendants' motion for summary judgment, plaintiff admits that in 2020, Dr. Nugent's duties were limited to those identified by Dr. Nugent.  ECF No. 63 at 41.  Thus any suggestion in plaintiff's complaint that plaintiff was ever seen by Dr. Nugent or that Dr. Nugent was ever made aware by plaintiff of plaintiff's issues with his hip are negated.

Any violation of plaintiff's Fourteenth Amendment rights by Dr. Nugent could therefore only arise via his review of records generated by other medical professionals.  However, plaintiff fails to point to any treatment or practice revealed in records as a substantial departure from accepted professional judgment, practice, or standards and then ratified by Dr. Nugent.  Plaintiff's allegations are thus rendered conclusory. It is well settled that a complaint must contain more than "naked assertions," "labels and conclusions."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For these reasons, defendants are entitled to summary judgment as to plaintiff's claim against Dr. Nugent.

III.  Sacramento County

Plaintiff claims that Sacramento County's policy, custom, or practice subjected him to conditions amounting to a violation of his Fourteenth Amendment right to due process while plaintiff was housed at the SCMJ.

A.  Law

Local governments, such as Sacramento County, are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a violation of federal law.  Monell v.

4

Dep't of Soc. Servs.,436 U.S. 658, 690 (1978).  Liability for improper custom may not be predicated on isolated incidents.  It must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

A civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive.  See Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004) A presumption of punitive conditions arises where such individual is detained under conditions identical or similar to, or more restrictive than, those under which pretrial criminal detainees are held, or where such individual is detained under conditions more restrictive than those he would face upon civil commitment.  Id.  If the presumption applies, a defendant is allowed to demonstrate the existence of legitimate, non-punitive interests justifying the conditions under which the detainee was held, and to show the restrictions imposed were not excessive in relation to such interests. See id. at 934-35.

B.  Plaintiff's Allegations of Fact

In his pleading, signed under penalty of perjury, plaintiff complains about the conditions of confinement while he was housed at the SCMJ as follows:

1.  He was confined to a cell on average of 22 hours per day.

2.  He was never provided treatment aimed at qualifying his release from SVPA detention.

3.  He was not given access to educational or self-help programs to which pretrial detainees and convicted prisoners had access.

4.  He was housed with a person found not guilty by reason of insanity who threatened to kill him.

5.  He was denied access to tablet computers to which pretrial detainees and convicted prisoners had access.

6.  He was only provided with outdoor recreation approximately 15 times.

7.  He was not permitted to attend religious services.

8.  He did not have daily access to legal research materials.

9.  He could not obtain an extra mattress to relieve hip pain.

5

10.  He could not receive incoming phone calls, and his ability to make phone calls was limited.

Prior to being housed at the SCMJ, plaintiff resided at Coalinga State Hospital (CSH) after a judge found probable cause that he would ultimately be civilly committed under the SVPA. Plaintiff described the conditions at CSH, in relevant part, as follows:

1.  Plaintiff was never locked in a cell.

2.  He received mental health treatment aimed at qualifying plaintiff for release.

3.  He had access to Coastline College courses and vocational training.

4.  He was housed with only persons committed under the SVPA.

5.  He had daily access to outdoor recreation.

6.  He could attend religious services.

7.  He had daily access to legal research materials.

8.  He was allowed a thick mattress to relieve hip pain.

9.  He could receive incoming phone calls and make phone calls daily.[1]

In his opposition to defendants' motion for summary judgment plaintiff points to evidence indicating that for at least some portion of his stay at the Sacramento County Jail, inmates had access to religious services to which he was denied despite plaintiff's request to attend.  ECF No. 63 at 14.  He also indicates that while housed at CSH he was permitted to possess a tablet computer.  Id. at 8

C.  Evidence Presented by Defendants

In support of their position that there is not at least a genuine issue of material fact as to whether Sacramento County violated plaintiff's Fourteenth Amendment rights while plaintiff was housed there, defendants offer, in part, the following:

1. Plaintiff's SVPA trial ended in a mistrial on March 18, 2020.  ECF No. 57-4 at 317. That same day CSH suspended readmission of SVPs to prevent the spread of Covid-19.  Id. at

---

[1] Plaintiff also mentions the differences in his ability to possess or access razors, nail clippers, and hair cutting tools at CSH and the SCMJ.  These allegations are not material to resolution of defendants' motion for summary judgment.

404.

2. While housed at the SCMJ, plaintiff had no visitors. Id. at 663.

3. While civil detainees could make phone calls during scheduled day room times, they could not receive them. Id.

4. Job assignments and educational services were available to plaintiff while housed in the SCMJ and he never requested either until near the end of his stay there. Ultimately, plaintiff was denied such programs due to Covid-19. Id. at 664-65.

5. Plaintiff did not have access to a tablet computer due to a shortage. Id. at 664.

6. Under written policy, persons detained under civil law receive more access to legal materials at the SCMJ than persons detained under criminal law. Plaintiff's request for access to legal materials and/or the law library were granted. Id. at 718-20.

7. Religious services at the SCMJ ceased on February 20, 2020, due to Covid-19 and were not permitted for the duration of plaintiff's stay at the SCMJ. Id. at 737-38.

8. The SCMJ does not provide treatment aimed at qualifying SVPs for release as the SCMJ does not normally have enough SVPs for treatment to be effective, the treatment could result in reprisal from those detained under criminal law, and while plaintiff was housed at the SCMJ, treatment was not available via Zoom from CSH. Id. at 786-91.

9. Second mattresses pose a security risk at the SCMJ as they facilitate hiding contraband and are only issued in limited circumstances such as to inmates in the third trimester of pregnancy or inmates who recently had hip surgery. Id. at 655.

D. Analysis

While not entirely clear, the court assumes that the conditions at CSH are the same for persons committed under the SVPA and those awaiting trial. This being the case, there is at least a genuine issue of material fact that plaintiff's conditions of confinement at the SCMJ created by Sacramento County custom and practice were punitive in violation of the Fourteenth Amendment. While defendants do point to some factors including Covid-19 and the presence of persons convicted of a crime or persons detained pre-criminal trial, which arguably justified the disparate conditions at the SCMJ, the factors do not establish as a matter of law that the conditions were not

7

punitive.  Most problematic is defendants' failure to point to an adequate justification for the amount of time plaintiff was forced to remain in a cell, the minimal access to outdoor recreation, the policy as to telephone use, and the lack of access to treatment which would have made it more likely plaintiff could be released from SVPA custody.[2]

For these reasons, defendants' motion for summary judgment as to plaintiff's Fourteenth Amendment due process claim against Sacramento County should be denied.

IV.  Former Sheriff Scott Jones

As an alternative to plaintiff's claims against Sacramento for policies which violate the Fourteenth Amendment, plaintiff claims former Sheriff Scott Jones created the unconstitutional conditions.  However, plaintiff makes no allegations of personal involvement as to defendant Jones and there is no evidence indicating he supervised day-to-day operations in the SCMJ.  There can be no individual liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations such as those made by plaintiff against defendant Jones are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Defendant Jones is entitled to summary judgment.  See King v. L.A. County, 885 F.3d 548, 559 (9th Cir. 2018).

V.    Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court assign a district court judge to this case.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgement (ECF No. 57) be granted in all respects except as to plaintiff's claim against Sacramento County arising under the Fourteenth Amendment premised upon punitive or overly restrictive conditions

---

[2]  To be clear, the court does not find that plaintiff has a freestanding right to such treatment under federal law.  See Stephenson v. Clendenin, No. 2:22-cv-1521 DAD JDP P, 2025 WL 3470205, *5 (E.D. Cal. 2025) (those awaiting trial under SVPA do not have a federal right to sex offender treatment).  The court only considers the lack of treatment as a factor in determining whether the conditions to which plaintiff was subjected at the SCMJ were unconstitutionally punitive.

of confinement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 23, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
cass1647.msj

9